BULLOCK *v.* AUDITOR GENERAL.

1. TAXATION—SALES OF LAND—CERTIFICATE—WITHHOLDING CON-
   VEYANCE.
   The mere possession of a certificate of the county treasurer
   that no taxes remain unpaid against certain land will not
   entitle its owner to redeem from a tax sale under section 98
   of the general tax law (Act No. 154, Pub. Acts 1895), where
   the certificate was not presented to the auditor general and
   no application such as the statute contemplates was ever
   made to him.

2. SAME—SETTING ASIDE SALE—TENDER OF PAYMENT.
   Under section 70 of the general tax law (Act No. 154, Pub. Acts
   1895), an honest effort in good faith to pay his taxes is neces-
   sary to relieve a landowner from the burden of a sale of his
   land for a delinquent tax; misinformation by the county
   treasurer in regard to the existence of the tax when informa-
   tion is sought for the purpose of bringing proceedings to
   avoid the tax will not have that effect.

Appeal from Monroe; Lockwood, J. Submitted Octo-
ber 10, 1905. (Docket No. 30.) Decided December 4,
1905.

Petition by Mary R. Bullock and B. Ellis Bullock
against James B. Bradley, auditor general, and Archie
T. Miller to set aside a sale of land for taxes. From the
decree rendered, petitioners and respondent Miller appeal.
Reversed, and petition dismissed.

*Willis Baldwin, John O. Zabel,* and *B. J. Corbin,*
for petitioners.

*Brown & Farley,* for respondent Miller.

MOORE, C. J. Mr. Miller, one of the respondents,
purchased, August 20, 1904, of the auditor general, the

E. ½ of N. W. fractional quarter of section 18, township 8 S., range 7 E., containing 96 acres, and received a deed therefor, and as a condition of purchase paid to the auditor general $505.48, and upon the same date purchased and procured deed for the S. W. ¼ of N. W. fractional quarter of section 18, township 8 S., range 7 E., containing 48 acres, paying as a condition of purchase $251.46; both of said descriptions of land being sold to the State under a decree for the taxes delinquent for the year 1889, and the sale being made in May, 1892. The petitioners asked leave by petition to open the decree for the sale of said lands. Upon hearing the petition, the trial court made an order setting aside the sale and the deed of respondent Miller, and as a condition ordered that the petitioners pay to the register of said court, or Mr. Miller, the sum of $360.01; the decree being based upon the contention that statements were made to the solicitor of the petitioners by the county treasurer, when proceedings were contemplated by them to set aside the tax, that there were no taxes remaining unpaid against said lands, and also upon certificates made by the county treasurer during and at the time when said tax had been returned to the State and was on the State tax land list subject to purchase from the State. Both parties appeal; the petitioners claiming the entire tax should be set aside, while the respondents claim the petition should be dismissed, or in any event that a return in full of the money paid by Mr. Miller should be required.

The circuit judge was of the opinion that, while the regularity of the tax could not be inquired into, the conversation between the attorney for the petitioners and the county treasurer followed by the tax certificates would amount to a payment in its effect upon the rights of the State to enforce a lien or sell the title to the premises. The petitioners were the owners of the land heretofore described. An application was made in June, 1888, for the construction of a drain across their and other lands, which application they signed. The record is meager as to what

was done in relation to this drain. It is clear, however, that petitioners' lands were assessed in 1889 and the tax extended against their lands. They paid all the other taxes, but declined to pay the drain tax. They testified .they employed a lawyer to take proceedings to set aside the tax. His testimony is not very clear, but it is to the effect that he examined the records with a view of commencing a chancery proceeding, and had a talk with the county treasurer. Of this conversation he testified:

"I was employed in reference to this tax for the Bullock drain some time in 1892, I think. Mr. Bullock, one of the petitioners, employed me to look it up for himself and wife. I went to the treasurer's office and made inquiry. I got the amount returned against the land. I do not remember whether the treasurer gave it to me or whether I looked it up on the records. I prepared a bill to file to set aside the drain tax. I do not remember what time in 1892 I first went there. I got the bill nearly completed. There was some details I wanted to get. I guess the last time I had any talk with the treasurer about it he said, 'there is no use doing anything about that ditch. That tax has been rejected; that is the end of it.' To make sure I wrote to the auditor general at Lansing."

The attorney described land in the wrong township in his letter. The auditor general replied that, as to the lands inquired about, they were not returned delinquent for the taxes of 1889 and 1890. On the cross-examination the attorney testified:

"This was in 1892 that I went to the county treasurer's office, and I found at that time the drain tax was unpaid. It remained a lien on the land. How much of the record I examined I do not know. I got the data and the amount of the tax that was returned. Whether the treasurer gave me the data I do not know. I don't know whether he gave me the amount from the books, or whether I went to the roll myself. The reason I wrote to the auditor general was I wanted to be sure that the treasurer's information to me was correct. He told me it had been rejected.

"Q. You had prepared a bill to set aside the sale. From that you were aware that the tax had been returned to the county treasurer?

"*A.* I undoubtedly understood at that time that the town treasurer had returned this tax. I knew he had returned it. It was in 1892 that I prepared a bill. The bill was for the purpose of setting aside the tax. By reason of the county treasurer's information, which was clinched by the auditor general's information, I did not start the suit."

Petitioners offered in evidence a certificate attached to a quitclaim deed from Judson and others to petitioner Bullock, conveying the land in question, which was objected to by the respondents, for the reason that the county treasurer was not the proper officer to make the certificate. A certificate was introduced which read as follows:

"STATE OF MICHIGAN, ⎫ ss. :
   County of Monroe. ⎬
      "Treasurer's Office,
                "Monroe County, Michigan,
                        "December 1st, 1893.
"I, Luke Dunn, county treasurer of said county, do hereby certify that I have examined the tax records in my office and find that the taxes assessed upon the lands described in the annexed deed have been paid for the five years preceding this date and that it does not appear from said records that either the State of Michigan or any individual hold any tax deed or lien upon said premises.
                        "LUKE DUNN,
                   "County Treasurer."

A like certificate was introduced bearing date November 20, 1901.

Did the trial judge reach a right conclusion as to the effect of these certificates, and what occurred between the attorney and the county treasurer? It will be remembered the decree was entered in 1892. The petitioners were nonresidents of the State. There was no personal service, but the usual newspaper publication was had. The petition avers the petitioners did not know of the sale of the land for the taxes until a short time before filing the petition. Section 70 of the general tax law (Act No. 206, Pub. Acts 1893) provides:

" That no sale shall be set aside after confirmation ex-

cept in cases where the taxes were paid or the property was exempt from taxation."

In which case the owner might move the court to set aside the sale, if the motion was made within a year after notice of the sale came to him. Section 98 of the general tax law (Act No. 154, Pub. Acts 1895) contains provisions for making corrections by the auditor general. The only one of the last-named provisions which could affect the situation here is the fourth one, reading:

"That a certificate that no taxes were charged against said lands has been given by the proper officer within the time limited by law for the payment or redemption thereof."

This certificate was not presented to the auditor general, and no application contemplated by the statute was made to him. The provisions of sections 70 and 98 have been repeatedly construed. In *Hand* v. *Auditor General*, 112 Mich. 597; *Kneeland* v. *Wood*, 117 Mich. 174, and *Kneeland* v. *Hyman*, 118 Mich. 56, it was held substantially that where one made an honest effort, acting in good faith, to pay his taxes, that he was protected by the sections of the law from which we have quoted. It is very clear in this case that the attorney for the petitioners was not seeking information from the county treasurer with a view of paying petitioners' taxes. On the contrary, it appears that his inquiries were made for the purpose of avoiding the payment of the taxes. His testimony indicates he did not put much reliance upon what he was told by the county treasurer, but wrote to the auditor general, making inquiries of him. In his letter he inquired about land in another township, and was truly informed in relation to the land about which he inquired. This court has not held, and it ought not to hold, that an effort to obtain information for the purpose of avoiding a tax, is the equivalent of an honest effort to pay the tax. See *Spaulding* v. *O'Connor*, 119 Mich. 45; *Berkey* v. *Burchard*, 119 Mich. 101; *Burns* v. *Ford*, 124 Mich. 274;

*Blondin* v. *Griffin*, 133 Mich. 647; *Rumsey* v. *Griffin*, 138 Mich. 413; *Smith* v. *Auditor General*, 138 Mich. 582.

The decree of the court below is reversed. The petition is dismissed, with costs of both courts.

McALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.